02D01-2203-PL-000105
Filed: 3/29/2022 11:41 AM
Clerk
Allen Superior Court 1
Allen County, Indiana
BB

| STATE OF INDIANA | ) | IN THE ALLEN SUPERIOR/CIRCUIT COURT |
|---|---|---|
| | ) SS: | |
| COUNTY OF ALLEN | ) | CAUSE NO. |

SYNERGID, INC. d/b/a )
PAUL DAVIS OF NORTHEAST )
INDIANA, )
 )
    Plaintiff, )
 )
v. )
 )
ANDY SATHER, )
 )
    Defendant. )

## COMPLAINT

Plaintiff, Synergid, Inc. d/b/a Paul Davis of Northeast Indiana ("Paul Davis"), by counsel, for its Complaint against Andy Sather states the following:

1. Paul Davis is a for-profit domestic corporation with its principal office located in the State of Indiana, County of Allen.

2. Andy Sather ("Sather") is an individual residing in the State of Indiana, County of Allen.

3. Paul Davis is a franchisee of Paul Davis Restoration, Inc. and is engaged in the business of insurance restoration reconstruction, remodeling, and loss mitigation and cleaning of residential and commercial structures.

4. Amongst other things, Paul Davis and its employees, including its project managers and estimators, have thorough product and market knowledge in the restoration reconstruction industry.

5. Paul Davis has built substantial business relationships with insurance companies within its franchise territory that routinely refer customers to Paul Davis for restoration reconstruction needs.

6. On or about January 10, 2007, Paul Davis hired Sather as an employee, and as a condition to his employment, they entered into a Non-Solicitation, Non-Competition, and Non-Disclosure Agreement (hereinafter, "the Agreement"). A true and accurate copy of the Agreement is attached hereto as Exhibit "1."

7. Sather worked for Paul Davis continuously from January 10, 2007 until January 31, 2022, at which time his employment was terminated.

8. During Sather's employment with Paul Davis, he was a regional project manager and estimator. Sather had significant interaction with customers and insurance adjusters during his employment.

9. The Agreement specifically states,

During the two (2) year period commencing on termination of employment, Employee shall not solicit or do business with any adjuster, insurance company, or other customer which [Paul Davis] has done business with (including providing estimates, whether nor not accepted) within the preceding year and any business that Employee accepts in violation of this restriction shall result in a sales commission, automatically and retroactively applied, of 25% of the gross sales amount, immediately due and payable from Employee to [Paul Davis].

10. The Agreement additionally states, "While employed by [Paul Davis], and for a period of two years commencing on termination of employment, Employee shall not directly or indirectly engage in [Paul Davis'] business within the Corporation's franchise territory or within the franchise territory of any other Franchise." (Agreement, pp. 1-2, ¶ 4.)

11. Upon information and belief, Sather began working for Restoration 1 of Fort Wayne ("Restoration 1") following his termination from Paul Davis.

12. Restoration 1 is a direct competitor of Paul Davis and also performs insurance restoration reconstruction in the same or similar territory as Paul Davis.

13. Upon information and belief, Sather is now employed by Restoration 1 as a project manager and/or estimator for Restoration 1, the exact same position and job he performed when he was employed by Paul Davis.

14. On or about February 18, 2022, Paul Davis notified Sather and Restoration 1 of the existence of the Agreement, and demanded that Sather cease his competitive employment with Restoration 1.

15. Upon information and belief, Sather is still employed by Restoration 1 as a project manager/estimator and is directly competing with Paul Davis within its franchise territory.

16. Upon information and belief, Sather is soliciting business from insurance companies and insurance adjusters that he had direct contact with while he was employed by Paul Davis.

## COUNT I – BREACH OF CONTRACT

17. Paul Davis restates and incorporates paragraphs 1 through 17 as if fully restated herein.

18. Sather breached the Agreement when he began employment with Restoration 1 in a capacity that directly competes with Paul Davis in the same industry and in the same or similar territory.

19.  Upon information and belief, Sather is soliciting business from insurance companies and insurance adjusters that he had direct contact with while he was employed by Paul Davis.

20.  Paul Davis has or will incur damages as a result of Sather's breach of the Agreement.

WHEREFORE, Plaintiff, Paul Davis, respectfully requests the Court to enter judgment in its favor and against Sather for monetary damages sustained, to issue an order for preliminary and permanent injunctive and other equitable relief pursuant to the terms of the Agreement barring Sather from soliciting customers and doing business with adjusters and insurance companies whom he previously worked with during his employment with Paul Davis, for interest, costs, and all other just and proper relief in the premises.

Respectfully submitted,

HAWK, HAYNIE, KAMMEYER & SMITH, LLP

BY:  /s/ W. Randall Kammeyer
W. Randall Kammeyer, #16439-49
Sarah L. Blake, #24864-02A
116 East Berry Street
Lincoln Tower Suite 302
Fort Wayne, IN 46802
(260) 422-1515
wrkammeyer@hawkhaynie.com
ATTORNEY FOR PLAINTIFF

USDC IN/ND case 1:22-cv-00150-HAB-SLC   document 3   filed 03/29/22   page 5 of 9

02D01-2203-PL-000105
Allen Superior Court 1

Filed: 3/29/2022 11:41 AM
Clerk
Allen County, Indiana
BB

# EXHIBIT "A"

## NON-SOLICITATION, NON-COMPETITION, AND NON-DISCLOSURE AGREEMENT

This Agreement is made as of January 10th, 2007, by and between PAUL DAVIS RESTORATION of NORTHEAST INDIANA (the "Corporation") and Andy Sather (the "Employee").

### Background:

The Corporation is a franchisee of Paul Davis Restoration, Inc., ("PDRI"), and, along with other PDRI franchisees (each a "Franchisee"), is engaged in the business of insurance restoration reconstruction, remodeling, and loss mitigation and cleaning of residential and commercial structures (the "Corporation's Business"). Employee desires to be employed by the Corporation and has agreed to the limitations set forth below as a condition of such employment.

**NOW, THEREFORE**, in consideration of the premises and the covenants and promises contained herein, the parties agree as follows:

1. BACKGROUND. The forgoing background is true and correct.

2. EXCLUSIVE EMPLOYMENT; EMPLOYMENT-AT-WILL. Employee's duties and compensation shall be as established by the Corporation from time to time or as set forth is a separate written compensation agreement. Employee agrees to exclusive employment by the Corporation and shall not enter into the services of or be employed in any capacity, whether directly or indirectly, by any person, firm, corporation, or entity other than Corporation and shall not engage in any business enterprise or undertaking other than employment by the Corporation without prior written permission of the Corporation. Employee's employment shall be for an indefinite period of time and nothing in this Agreement shall be construed as creating an employment term for a definite time nor shall in any way impair the right of either the Employee or the Corporation to terminate the Employee's employment, with or without cause.

3. NON-SOLICITATION. During the two (2) year period commencing on termination of employment, Employee shall not solicit or do business with any adjuster, insurance company, or other customer which the Corporation has done business with (including providing estimates, whether or not accepted) within the preceding year and any business that Employee accepts in violation of this restriction shall result in a sales commission, automatically and retroactively applied, of 25% of the gross sales amount, immediately due and payable from Employee to the Corporation.

4. NON-COMPETITION. While employed by the Corporation, and for a period of two years commencing on termination of employment, Employee shall not

directly or indirectly engage in the Corporation's business within the Corporation's franchise territory or within the franchise territory of any other Franchise.

5. **TRADE SECRETS.**

A. **Trade Secret Defined.** Employee shall acquire and possess certain secret and confidential information of PDRI, now existing or hereinafter developed or acquired relating to the operation of a Paul Davis Restoration® franchise, including but not limited to: job cost accounting techniques, customer lists, ideas and data contained in PDRI's computer software, Operations Manual, Procedures Manual, training Manuals and sales techniques as applied to the insurance industry, knowledge of sales and profit performance of PDRI's other Franchisees but not including information or techniques in the public domain and generally known and used by general contractors other than through disclosure by Employee. All of the foregoing is hereinafter referred to as "Trade Secrets."

B. **Right to Use Trade Secrets.** Employee acknowledges that PDRI is the sole owner of all Trade Secrets, that such information is being imparted to Employee only by reason of Employee's employment by the Corporation, and that the Trade Secrets are not generally known to the trade or public and are not known to Employee except by reason of such disclosure. Employee shall acquire no interest in the Trade Secrets other than the right to their use in the course of employment during the term of this Agreement. Employee further acknowledges that the use or duplication of the Trade Secrets except as expressly permitted by this Agreement shall constitute an unfair method of competition and that PDRI, the Corporation, and other Franchisees shall suffer irreparable injury thereby.

C. **Covenant Not to Disclose.** Employee acknowledges that the Trade Secrets are disclosed to Employee solely on the condition that Employee agrees, and Employee hereby does agree, that Employee will:

1. Use the Trade Secrets in strict accordance with the Operations Manual and with directions given by PDRI or the Corporation from time to time;

2. Not use the Trade Secrets in any other business or capacity during or after the term of this Agreement;

3. Maintain the absolute confidentiality of the Trade Secrets during and after the term of this Agreement;

4. Not duplicate, copy, or otherwise reproduce any written materials containing the Trade Secrets without PDRI's prior written consent;

5. Observe and implement those procedures established by PDRI and set forth in the Operations and Procedures Manual(s) to control the

2

     use and disclosure of Trade Secrets by employees of Corporation; and

    6. Immediately notify PDRI in writing of any suspected or actual use of the Trade Secrets by a third party.

  D. <u>Covenant to Secure Materials</u>. Employee shall assist Corporation in keeping all Operations Manuals, Procedures Manuals and other written materials, and computer software containing the Trade Secrets in a secure location and in maintaining control over such materials at all times.

  E. <u>Changes to Trade Secrets</u>. PDRI retains the right to make additions, deletions, and revisions to the Trade Secrets. Such changes shall become binding upon Employee upon notification thereof, and Employee agrees to take all steps necessary to implement such changes.

  6. <u>OTHER CONFIDENTIAL RECORDS</u>. In addition to the Trade Secrets described in section 5 above, Employee will receive certain other confidential information regarding the Corporation and its activities ("Confidential Information"). Employee shall not disclose this Confidential Information while employed by the Corporation or at any time thereafter.

  7. <u>RETURN OF RECORDS</u>. Upon termination of employment, Employee shall deliver all documents, software, records, notes, data, memoranda, models, and equipment of any nature that are in Employee's possession or under Employee's control and that are the property of the Corporation or relate to the employment or to the business of the Corporation.

  8. <u>ENFORCEMENT.</u> This Agreement is intended to benefit and protect the rights of the Corporation, PDRI and the other Franchisees and Employee agrees that each of them shall be entitled to enforce the provisions of this Agreement. Each party shall also be entitled, in addition to any other remedies that it may have under this Agreement or otherwise, to preliminary and permanent injunctive and other equitable relief to prevent or curtail any breach or threatened breach of this Agreement by Employee. No specification in this Agreement of a specific legal or equitable remedy shall be construed as a waiver of other legal or equitable remedies in the event of such a breach.

  9. <u>SEVERABILITY</u>. It is the parties' intention that all provisions of this Agreement be enforced to the fullest extent permitted by law. If any provision of this Agreement is held to be illegal or unenforceable, such provision shall be severable and the remaining provisions shall remain in full force and effect.

  10. <u>GOVERNING LAW AND VENUE</u>. This Agreement shall be governed and construed in accordance with the laws of the state in which the Corporation has its principal offices. Venue for any suit to enforce the terms of this Agreement shall be in a court of competent jurisdiction in the county in which the Corporation has its principal offices.

11. **ENTIRE AGREEMENT.** This Agreement contains the entire understanding and agreement between the Corporation and the Employee with respect to the subject matter herein and supersedes all prior oral and written agreements, if any, between the parties with respect to that subject matter. No other agreement or understanding hereafter modifying or supplementing this Agreement shall be binding in any way upon either party unless confirmed in writing and signed by the duly authorized representative of Corporation and Employee.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to executed as of the day and year first above written

**The Corporation:**

PAUL DAVIS RESTORATION OF

NORTHEAST INDIANA

1/10/07
date

By: _[signature]_
Print name: _Shelly Koelpel_
Its: _____

**Employee:**

1/10/07
date

_Andy Sother_
Print name: _Amy Smith_
Address: 1107 Polo Run
City, St, Zip: F.W. IN 46825

4